145 So.2d 883 (1962)
James Willard NEVEILS, Appellant,
v.
STATE of Florida, Appellee.
No. D-168.
District Court of Appeal of Florida. First District.
October 25, 1962.
Wayne E. Ripley, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
McLANE, Associate Judge.
The appellant (defendant) was tried upon an indictment charging second degree murder of his wife and convicted of manslaughter, from which he appeals.
The appellant and his wife had been married for a number of years, his wife being a chronic alcoholic who also suffered from asthma. She frequently disappeared from home and remained away for several days usually on a drunken escapade. Not infrequently the defendant himself joined his wife in sprees. At times they quarreled and on occasions the appellant manhandled his wife by striking her with his fist. On Monday, August 28, 1961, the appellant and decedent drank a fifth of whiskey and that afternoon the decedent left home. The appellant spent the night in their home but the decedent did not return. The following day the appellant met an acquaintance in a pool hall in the city of Starke and drank continuously of beer and whiskey until about 3 a.m. Wednesday when they went to the defendant's home. They found the lights on in the living room, the radio playing, and a fan running in the kitchen. The two drank *884 more beer for about half an hour at which time the companion went to sleep on the couch in the living room and the appellant on the bed in the bedroom. The acquaintance was a light sleeper but heard no noise or commotion at any time during the night. When he awoke at about 10 a.m. he called the appellant at which time the appellant found his wife lying on the floor beside the bed almost nude. He did not know how or when she got there. While appellant saw bruises upon her body and legs he paid no attention to her for he was accustomed to seeing his wife in drunken stupors. It also appears that the decedent frequently fell while walking as well as from the bed to the floor while in such condition. Defendant and his companion left the house, bought and consumed more whiskey, returning to the appellant's place but remaining outside the house until about 2:30 p.m. Upon reentering the house the defendant requested his companion to assist him in lifting his unconscious wife to the bed. It was then he became aware of the seriousness of her condition and at the suggestion of the acquaintance an ambulance was called, the wife taken to the hospital where she died some three hours later. One doctor was of the opinion death was due to alcoholism, while another had the opinion that the cause of death was physical beating and pneumonia.
The appellant presents several points for our determination but in view of the conclusion reached it is necessary to consider only the sufficiency of the evidence to sustain the verdict and judgment.
Upon oral argument the Attorney General with complete frankness and candor stated that the conviction cannot be sustained upon the theory that the appellant was responsible for administering the severe beating resulting in the death of his wife; but rather he argued that the conviction should be affirmed upon the theory that the indifference of the defendant towards his injured wife was such as to show a grossly careless disregard for her safety and welfare as to amount to culpable negligence.[1]
We agree that the evidence purely circumstantial in nature does not meet the test. While there is a strong suspicion the defendant was actually responsible for the condition of his wife, the proof is not inconsistent with every reasonable hypothesis of his innocence.[2]
We are therefore squarely confronted with the proposition of whether or not the appellant was guilty of culpable negligence for failure to aid or otherwise be concerned with the safety of his wife during the intervening approximately four-hour period when he first discovered her lying on the floor and medical attention was received. We think not. In the first place, there is no proof that death would not have followed had she promptly received treatment earlier in the day when first discovered by the defendant nor is there any proof to the contrary.
We find no Florida authority in point nor has counsel cited any. However, the case of Bradley v. State[3] is persuasive. The Court actually held the failure or refusal of a father to furnish medical aid to an invalid and severely burned child for three weeks did not constitute the crime of manslaughter under our statute, supra. The Court went on to say:
"* * * Whatever motive may have prompted the father in failing and refusing to provide medical attention for his severely burned daughter, such failure and refusal, however reprehensible, does not appear to be within the letter or intent of the statute making `the killing of a human being by the act, procurement or culpable negligence of another,' a felony called manslaughter. It is not claimed that the allegations. *885 and proofs show that any `act' or `procurement' of the father caused the death of the child." (Page 679, 84 So. page 679.)
As callous as defendant's attitude towards his wife may have been, there is no evidence to show any culpable negligence of the appellant caused the death of his wife. In the absence of other evidence legally sufficient to contradict the defendant's explanation, his version cannot be ignored.[4]
The proof is insufficient and the judgment appealed from should be reversed.
Reversed.
CARROLL, DONALD K., Chief Judge, and RAWLS, J., concur.
NOTES
[1] F.S. § 782.07, F.S.A.
[2] Adams v. State, Fla.App. 1958, 102 So.2d 47; Mayo v. State, Fla. 1954, 71 So.2d 899; and Davis v. State, Fla. 1956, 90 So.2d 629.
[3] 79 Fla. 651, 84 So. 677, 10 A.L.R. 1129.
[4] Mayo v. State, supra.